Your Honor, Antmore Baggett for the appellant. Good morning. Good to see you again, counsel. Good to see you, Your Honor. I'm just talking about your recent decision in the resentence case. Which one? The attempt one. Oh, okay. Your Honor, on December 14th, 1998, District Judge Green in Utah imposed a 46-month sentence upon the appellant. When that judgment was final, docketed, and the appeal time expired, the judge could not impose any additional time without a finding of additional facts. Those facts were alleged in October of 2003, and they are, number one, that the defendant illegally reentered. That's a question of fact, whether he did or didn't. That he was found. That's basically testimonial on the part of the Border Patrol agent that he found this defendant and he is the right person and so forth. And there's a third factual allegation that he did not have legal permission to reenter. Since you have such a short time and are very gracious, Presiding Judge, as we go ahead, let's assume that Blakely Booker applies. Yes. Did your client admit all the facts anyway? Your Honor, the proceeding before Judge Campbell was a 3-in-1. He had admitted the reentry in another context in another case.  He did not have legal permission. He did not admit it in the supervised release case. He did admit it in the new charge against him, which was also a reentry. Same facts. But he did not admit it in this case. And had he, if those facts are to be used in this case, the district judge or the magistrate judge should have advised him of the direct consequences, namely, that he would be admitting the violation of supervised release, which was not done by Magistrate Judge Irwin and Yuma. It's never done as a procedure. Second, the ---- So what case are you relying upon to support your argument that the court has to advise someone of the supervised release consequences of admissions? Well, Jackson v. Zerch is traditionally ---- I'm sorry. To get a waiver, there has to be a knowing and intelligent waiver of known rights, not just a forfeit. Guilty plea. You talk about Rule 11. Rule 11, yes. Right. So, but does Rule 11 apply in terms of the supervised release revocation? I mean, I think we're transposing the Rule 11 requirements into a supervised release context. And I'm asking you what case authority you have for that transference. Well, just the general law that when someone pleads guilty in a new charge that he has to be advised of the direct consequences. What was the new charge? The reentry, the same facts as alleged in the petition to revoke the supervised release. They're the same facts. He was charged twice, the new charge under 1326 and the same facts as a violation of his supervised release. Right. But you're not asserting that his guilty plea was tainted, right? No, we're not trying to set aside that. I'm just saying that the admissions in the other case cannot be used in this case because there was not a knowing and intelligent waiver of the rights under this case, the supervised release case. They're two separate cases. One is from 1998. One is from 2003. Let me ask you this. If we don't assume that Booker and Blakely applies, what's your best case authority for the proposition that the Sixth Amendment applies to revocation of supervised release? Well, I have to rely strictly on Blakely-Booker because prior to that, I don't think anybody or I certainly didn't know that statutory maximum means guideline maximum. We always thought there was a big difference between the two. Well, isn't there a big difference between supervised release, revocation proceedings and criminal prosecutions? Yes, but here they're combined. They're the same facts. Right. But, I mean, the system itself. Normally, that's true. Is the supervised release considered a prosecution, though? Well, I don't see why not. It certainly can result in two, three or five years of additional imprisonment, so it has to be considered as a prosecution, yes, and should be under the same rules. I don't see why not. Do you have any case authority to support that? No, I don't, Your Honor. I think Blakely made a big change in constitutional law in the Sixth Amendment. But not everything's covered. I mean, not everything's covered under Blakely. The whole world isn't swept into the Blakely. Well, Blakely does say that maximum, statutory maximum no longer means what we thought it meant. It means what the judge may impose after, without finding additional facts, and the judge could not have imposed this sentence on Mr. Nunez without a finding of additional facts. I thought Booker expressly accepted supervised release revocations from its scope. I wasn't aware of that, Your Honor. I didn't read it that way. It's very broad. It says whenever additional facts are necessary, the Sixth Amendment right is conferred upon the respondent, and he has the right to ask for a jury trial. We must bear in mind, of course, that these are additional facts. It is additional punishment for the 1998 conviction, and it is not a punishment for the new conviction. That's your Liero case, and Section 3583A quite clearly says that supervised release revocation is a part of the sentence, the old sentence, not the new sentence. Right. But I ask you about your argument that the government was required to recommend a sentence at the low end of the guidelines. Right. It seems to me that the de Rossi case forecloses that argument. What is your best argument that de Rossi should not apply in this case? Well, the government made a promise back in Utah that it would recommend the minimum sentence, which was 46 months, which it did in Utah. Any additional punishment would be part of the same sentence. So it should have recommended no more than 46 months, or at least stayed silent. And that's my best argument there. If it goes back to the old sentence, it goes back to the old plea agreement. And the plea agreement contained a government promise to make a recommendation for minimum sentence, which was only the 46 months, which this fellow had done already. So they should have at least stayed silent at the revocation. Well, there's nothing in the plea agreement that shows that either party thought about this issue, isn't there? I mean, about supervised release. But minimum sentence meant 46 months. And now he's being sentenced to, in effect, 54 months on the old sentence, apart from what he gets on the new sentence. Was this issue properly preserved in the district court? No, sir. It wasn't raised. It's before the court on plain error. We submit that is fundamental because a Sixth Amendment right is being asserted here, that it is the case law under Blakeley and Booker is quite clear. It's plain at least now. Blakeley came out nine days after this fellow was sentenced, very timely. So it could not have been raised previously, but these cases are now clear, and the issue is plain at this time. So that's your standard of review. And I'd like to reserve a few minutes for a rebuttal. All right. Thank you, counsel. May it please the Court. Jackie Ireland on behalf of the United States. This is a case where the district court in Utah gave the defendant actual notice of the terms of his supervised release, which he later knowingly admitted to violating in the district court in Arizona. And the district court then revoked the defendant's supervised release and lawfully imposed a sentence of eight months in the Bureau of Prisons. As for the Court's questions regarding the Booker issue, the government, first of all, the government knows that this was not preserved in the lower court, so plain error analysis does apply. The government does not believe that there's any case law that states in the Ninth Circuit that Booker would apply to revocation of the defendant's supervised release. The Eighth, Eleventh, and First Circuits have all squarely addressed this issue and have all held that defendants do not deserve the right to have a jury trial at a revocation stage, even in light of Booker. So, counsel, on page 764 of Booker, Head Note 11, it seems to me that supervised release, along with other forfeiture, pre-sentence reports, is expressly excluded from this case. The government agrees. Yes, Your Honor. We do not think Booker or Blakely apply to supervised release. The defendants have never had the same Sixth Amendment protections at revocation stage as they do at trial stage. For example, the government need only prove a violation of supervised release by preponderance of the evidence, whereas we must prove by beyond a reasonable doubt standard guilt at trial. So we don't believe that the defendant is entitled to a jury trial at the revocation stage. The Work case, Coleman, Griffin, and White from the First, Eighth, and Eleventh Circuits have all used a plain error analysis, and we, the government would urge this Court to adopt their reasoning and follow those circuits in deciding that defendants are not entitled to a jury trial at revocation. Those are the cases you cited in your 28-J letter? Yes, Your Honor. Okay. Let me ask you about Ortega-Brito. In that particular case, the defendant was asked about and indicated an understanding of supervised release. Unlike that case, in this case, Mr. Nunez-Nunez was never asked about and never indicated any understanding of the terms of supervised release. Why, then, should we find that he had actual notice of those terms? Yes. At SER page 28, the district judge in Utah clearly advised the defendant of not only the special term of his supervised release, the special condition that he not illegally reenter, but also gave the defendant actual notice of standard condition number one, quote, while on supervised release, he shall not engage in any acts that constitute the commission of a state or federal or local crime, end quote. And then the judge later goes on to give the defendant notice of the special condition, quote, one special condition is that he shall not reenter the United States again illegally without the specific consent of the Attorney General of the United States, and that if he should reenter during the period of supervised release, he shall contact the probation office in the district where he reenters within 72 hours, end quote. Counsel, I think the question was whether or not the concept of supervised release was explained, that if you violate these conditions, you can serve additional time. Was that explained? You know, Your Honor, I'm not sure if the district judge did, in fact, explain that he could be revoked or that he could serve additional jail time. But if the Court is interested, I'd be happy to submit additional letter or briefing on that issue. At least we searched the record and we couldn't find anything. The government would be happy to submit additional information. Assuming that there is nothing there reflecting that the district court judge did explain the concept of revocation of supervised release, does that distinguish this case from a Tega-Bredo? I don't believe so. I think that the Court necessarily has to state that the defendant could go back to jail. The Court admonished the defendant that he cannot commit a new State, Federal or local crime. To assume that a defendant does not understand that he can't go back to prison for that would seem not logical to the government. If you're telling somebody you don't commit a new State, Federal or local crime, it seems logical to assume that person understands that if they do such a thing, then they could suffer consequences such as being sent back to prison or sent back to jail. We think that this case is in line with our Tega-Bredo because this defendant was given actual notice of not only the special but the standard condition, and then the petition to revoke alleged the special to which he admitted before the district court in Arizona. Addressing the breach of the plea agreement issue, Your Honors, the government does not believe it would be logical to hold the government to the low end recommendation since the plea agreement is silent as to whether or not the parties intended for this promise or this stipulation to live on forever. However, even if it did live on to revocation stage or to the admit-deny hearing, the government did in fact recommend the low end. We recommended that he receive the low end on the revocation, and the defendant did in fact receive the low end from the district judge in Arizona. To assume that the government would be bound to recommend the original sentencing range is simply not logical. That range is not available under the guidelines, the advisory guidelines of supervised release. They gave him a range of 8 to 14 months, not 46 months as the defendant is now arguing. So that argument just doesn't make practical sense. The defendant was facing a term of 8 to 14 months, and the government recommended the low end, which is 8 months, and the defendant in fact received that time. In conclusion, Your Honors, the record is clear that the defendant was given actual notice of the terms of his supervised release, both the standard condition and the special condition. He was not entitled to a jury trial on this issue because revocation, the Sixth Amendment is not implicated at the revocation stage. And further, there was no breach of the Utah plea agreement while in Arizona at the district court, because that plea dealt only with the initial plea and sentencing of the defendant, and the promises therein did not live on. Therefore, the government asked this Court to affirm the revocation and the sentence in this matter. Thank you. Thank you, counsel. Rebuttal. Your Honor, at no point in the proceedings was it explained to the defendant that the guideline would be other than 46 to 57 months for his original sentence in Utah. It did not say that there's any distinction between 8 more months in Phoenix to be added to the original 46 months back in Utah. When we talk about minimum sentence, we mean for the 46 months which was imposed by Judge Green back in 1998, not an additional 8 months. Does that mean that he could commit all sorts of crimes and always be bound by the 46 months? Well, no. It just means the government should recommend the 46 months. Now, Judge Campbell, frankly, may have re-evoked him anyway and imposed the same sentence, but what the defendant was entitled to was a government recommendation that the judge not do that. He may have done it anyway. I mean, realistically, it's very possible. But still, what the defendant is entitled to is the benefit of his plea agreement. And just on Ortega-Britta, the requirement under statutes and under that case is written notice, not oral notice. Counsel, what's your response to opposing counsel's citation to other circuits' resolution of the Booker issue as it applies to supervisory? The Eighth Circuit case of Coleman only holds that the guideline recommendations were advisory prior to Booker and Booker didn't change anything because they always were just recommendations in Chapter 7. It was a distinction between Chapters 1 to 6 and 7, so it didn't change anything. That case is not applicable here. United States v. Work in the First Circuit talks about parole revocation and probation revocation. It doesn't talk about supervised release. Right. Parole shortens a term, and that was replaced 20 years ago by supervised release. But we've cited parole revocation cases by analogy in resolving supervised release issues. But there was a major change in, at least in the legal theory in 1984 with the Sentence Reform Act that used to be in the Federal system people got their term shortened by parole. Now they get it elongated by supervised release revocation. That's the difference between the two. What's your response, then, to the language in Booker that expressly excludes supervised release from its holding? Well, the majority holding, of course, there's many opinions in Booker. They don't agree among themselves completely on everything. But the bottom line is we reaffirm the holding in appending any fact which is necessary to support a sentence exceeding the maximum authority by the facts established by a plea of guilty must be admitted or proved to a jury beyond a reasonable doubt. But we can't ignore the other language, can we? Well, that's the principle holding. What I just read says any fact which is necessary. We understand your argument. All right. Thank you. Any other questions? No. Thank you to both counsel.  The next case in the room is a case that was submitted by the Supreme Court.
judges: D.W. Nelson, Rawlinson, Bea